IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WARD A. CAVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 15-cv-054-CJP[1] |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Ward A. Cave seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in April 2011, alleging disability beginning on September 26, 2010. After holding an evidentiary hearing, ALJ Kevin R. Martin denied the application in a written decision dated August 19, 2013. (Tr. 12-23). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

Plaintiff filed an amended complaint indicating that a subsequent application was granted and he was found disabled as of June 28, 2014. Therefore, he seeks

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 10.

review for the closed period of September 26, 2010, to June 27, 2014. This amendment does not materially change the analysis of the issues presented.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in weighing the medical opinions.

2. The ALJ did not properly assess plaintiff's credibility.

3. The ALJ improperly assessed plaintiff's ability to do his past work.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009.

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245

F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Mr. Cave was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Martin followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. Plaintiff worked at three jobs for about two weeks each in the first half of 2011, but he had to leave each job because of back pain. The ALJ considered these to be unsuccessful work attempts. He is insured for DIB through December 31, 2016.

The ALJ found that plaintiff had severe impairments of obesity, degenerative disc disease and rheumatoid arthritis. He further determined that plaintiff's impairments do not meet or equal a listed impairment.

The ALJ found that Mr. Cave had the residual functional capacity (RFC) to perform a full range of work at the light exertional level. Based on the testimony of a vocational expert, the ALJ found that plaintiff was able to do his past relevant work as a chef and manager as that work is generally performed. Accordingly, he found at step 4 that plaintiff was not disabled.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

1.   **Agency Forms**

Plaintiff was born in 1956, and was 54 years old on the alleged onset date of September 26, 2010. (Tr. 146). He had completed one year of college. (Tr.

151). Mr. Cave had worked as a restaurant cook, restaurant chef, and dietary supervisor in a hospital. (Tr. 161-168).

Plaintiff submitted a Function Report in May 2011 in which he stated that he had pain with lifting, bending, stooping, reaching, kneeling, walking, and turning sharply. He cooked only frozen, quick meals. He did no household chores. His sister assisted him with laundry, cooking and cleaning. He said that he looked for work every day. He was not taking any medications because he could not afford to see a doctor. (Tr. 172-179).

Plaintiff reported in July 2011 that he had severe and continuous pain in his lower back and down his right leg. He also had "arthritis flareups." He had recently tried working at three different jobs, but could only last two weeks before the pain became too much. He cooked frozen dinners and cleaned house for about 2 hours a week. He seldom went out and had "become reclusive due to pain." (Tr. 213-220).

In February 2012, plaintiff reported that he had begun taking OxyContin. The pain in his low back and down his right leg was getting more intense. (Tr. 248).

2. **Evidentiary Hearing**

Mr. Cave was represented by an attorney at the evidentiary hearing on June 14, 2013. (Tr. 32).

Mr. Cave was living in a mobile home with friends who basically supported him. He had been living there since December 2012. He was 5'7" and weighed 170 pounds. He had lost some weight. He occasionally used a cane for walking.

(Tr. 36-38).

Plaintiff was injured at work in September 2010. He was an executive chef at a Holiday Inn in California. Plaintiff worked for two weeks as a restaurant cook in May or June of 2011. He had to quit because of pain in his low back going down his leg. Before that, he worked as an assistant manager at a Denny's, but had to quit after two weeks because of pain. (Tr. 39-40).

Mr. Cave testified that he was unable to work because of pain in his low back going down his right leg. His pain had gotten progressively worse since September 2010. He had limited ability to twist, turn, pivot, lift, reach, and walk. He took OxyContin, prescribed by Dr. Altwal. It made it very difficult for him to focus on anything. Dr. Altwal sent him to a specialist who said that "the next step would be surgery." He had not been evaluated by a surgeon because he did not have the money. He testified that he also had sporadic difficulty raising his right arm. (Tr. 42-44).

Mr. Cave testified that he had been referred for physical therapy for his back, but it was too painful and also he could not afford it. (Tr. 45).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment, that is, a person of plaintiff's age and work history who was able to do a full range of work at the light exertional level. The VE testified that this person would be able to do plaintiff's past work as a chef and a manager as those jobs are generally performed. The VE testified that the jobs of chef, food service manager and supervisor of hospital food services are all classified as light exertional jobs in the *Dictionary of Occupational*

7

*Titles.* (Tr. 57-58). However, if plaintiff needed to have the option to use a cane for ambulating, he would not able to do any of his past work and there would be no other light exertion jobs that he could do. (Tr. 60).

### 3. Medical Treatment

Plaintiff was seen in the emergency room on September 26, 2010, after he hurt his back lifting heavy boxes. He was given IV pain medication. He was seen by a doctor at the same hospital on September 29, 2010, complaining of constant pain in the low back radiating into the right leg. On exam, he had significant lumbar tenderness and an extremely poor range of motion of the back. Straight leg raising was positive on the right at 25 degrees. He was prescribed Norco and Soma. The doctor suspected a herniated disc, but recommended a referral to a spine specialist and an MRI. (Tr. 376-377).

The workers compensation insurance carrier authorized a referral to Dr. Glenn, an orthopedic surgeon. (Tr. 368).

Dr. Glenn saw plaintiff on October 28, 2010. On exam, Mr. Cave was 5' 7" tall and weighed 200 pounds. He had limited range of motion of the lumbar spine. Straight leg raising to 60 degrees reproduced pain from the right buttock to the right knee. Dr. Glenn's impression was acute lumbago and right lower extremity sciatica. He prescribed a Medrol Dosepak and recommended an MRI of the lumbosacral spine. (Tr. 361-364).

An MRI of the lumbosacral spine done on November 16, 2010, showed disc desiccation and narrowing at L3-4 with no protrusion or bulge, disc desiccation and narrowing at L4-5 with minimal encroachment on the thecal sac but not the

8

spinal cord, and disc desiccation without narrowing at L5-S1 with bulging but no nerve root encroachment. (Tr. 333-334).

Dr. Glenn prescribed physical therapy. (Tr. 331). After 11 therapy sessions, he had increased pain with sitting for longer than 30 to 45 minutes and with prolonged standing, walking, or repetitive bending or lifting. (Tr. 307).

On January 5, 2011, Dr. Glenn noted that Mr. Cave had returned to work with restrictions on December 28, 2010, but his back pain returned after one hour. On exam, he had some limitation of the range of motion of the lumbar spine, but he was able to sit on the table without pain. His posture was upright and he was not limping. Motor strength was full and straight leg raising was negative. The impression was lumbar degenerative disease with chronic lumbago. Dr. Glenn recommended further treatment with a referral to pain management and continued physical therapy. He did not recommend surgery. Dr. Glenn stated that plaintiff was, at that point, "unable to return to his usual and customary occupation." Plaintiff was continued on modified work duty status. (Tr. 303-306).

On February 28, 2011, Dr. Glenn submitted a supplemental evaluation report to the workers' compensation carrier. He had not seen Mr. Cave since January 5, 2011. He rated plaintiff's permanent impairment as "0% whole person impairment." (Tr. 388-389).

Mr. Cave moved to Illinois in 2011. In April of that year, he went to an emergency room in Effingham, Illinois, for pain in his right hip and left wrist. He said that he had a history of rheumatoid arthritis and the symptoms were the same as his last flare up two years earlier. He was given an injection of Dilaudid and

9

Toradol.  (Tr. 482-486).

Dr. Vittal Chapa performed a consultative physical examination at the request of the agency on September 6, 2011.  Dr. Chapa noted that plaintiff walked with a slight limp favoring the right leg.  Lumbosacral flexion was subjectively limited to 40 degrees.  Neurological exam was normal.  Straight leg raising was negative in the sitting position and plaintiff would not raise his right leg when the test was done in the supine position.  There was no muscle atrophy in the legs.  An x-ray of the lumbar spine showed a decrease in the lumbar lordosis suggestive of spasm and degenerative changes of mild to moderate degree.  Dr. Chapa diagnosed chronic lumbosacral pain syndrome and history of asthma.  (Tr. 533-543).

Plaintiff began seeing primary care physician Shadi Altwal, M.D., on October 11, 2011.  He presented with "multiple medical problems" including low back pain radiating into his right thigh.   (Tr. 769).

Dr. Altwal prescribed physical therapy.  Mr. Cave was evaluated by a physical therapist on October 13, 2011.  On exam, the trunk range of motion was limited in all planes by 50% and he walked with an antalgic gait.  The therapist noted that he had been prescribed Flexeril and Naprosyn, but he could not afford them.  The plan was for him to be seen two times a week for six weeks.  He attended one session on October 20, 2011, but requested to be discharged on December 15, 2011, because of the cost.  He was independent in a home exercise program and was no longer limping.  (Tr. 744-748).

On Dr. Atwal's referral, Mr. Cave was seen by a pain management specialist,

Dr. Ghalambor, on November 22, 2011.  Plaintiff told Dr. Ghalambor that he had hurt his back at work in September 2010, and his pain was aggravated by a rear-end vehicular accident in February 2011.  He complained of low back pain radiating into the right thigh.  On exam, flexion/extension of the lumbar spine reproduced lumbar pain.  He had tenderness over the right lumbar paravertebral area, the right SI joint and right greater trochanter area.  Straight leg raising was positive on the right at 5 degrees and on the left at 35 degrees.  He had decreased sensation in the L4, L5 and S1 dermatomes.  Dr. Ghalambor ordered an MRI and an EMG of the lower extremities.  A copy of the office note was sent to Dr. Altwal. (Tr. 565-568).

     An MRI of the lumbar spine done on November 23, 2011, showed mild disc bulge and moderate facet arthropathy at L3-4, mild disc bulge with moderate hypertrophic facet arthropathy and moderate left foraminal stenosis and disc bulge abutting the exiting left L4 neve root at L4-5, and mild diffuse disc bulge at L5-S1 with small central peripheral tear.  (Tr. 562-563).

     On November 23, 2011, Dr. Altwal noted that he had been seen by a pain clinic.  He was to continue taking Flexeril and Naprosyn for his chronic back pain. (Tr. 767).

     An EMG done on December 12, 2011, showed no neurodiagnostic evidence of neuropathy or radiculopathy in either leg.   (762-764).

     On December 23, 2011, plaintiff complained to Dr. Altwal of back pain and said that he could not walk long distances.  Dr. Altwal prescribed OxyContin.  (Tr. 766).  The next month, his back pain was less and he felt better.  He had no side

11

effects from his medications.  (Tr. 765).

Mr. Cave went to the emergency room for pain in his right hip in February 2012.  He had a history of rheumatoid arthritis, but had stopped taking Arava in 2011 and did not currently have a rheumatologist.  He saw "Dr. Altwal-free clinic." He tested positive for cannabinoid.  He was given a shot of Toradol and left the emergency room "against medical advice."  (Tr. 1015-1027).

Plaintiff went to the emergency room at a different hospital in June 2012, complaining of chest pain radiating into his right arm and low back pain.  It was noted that his primary care physician was Dr. Altwal, and he was taking Oxycodone for chronic back pain.  He was admitted for serial cardiac enzymes and monitoring.  Cardiac enzyme testing was negative, his pain resolved, and he was discharged the next day.  (Tr. 960-963).

Plaintiff submitted a medication list in which he stated that Dr. Altwal prescribed a cane in February 2013.  (Tr. 264).  There is no office note corresponding to that date in the transcript.

    4.    **Dr. Altwal's Opinions**

Dr. Altwal assessed plaintiff's ability to do work-related activities in June 2013.  Among other limitations, he opined that plaintiff could lift only 10 pounds, and could sit for 1 hour and stand/walk for 2 hours total per day.  He also indicated that plaintiff needed a cane to ambulate and could only ambulate for 7 minutes without a cane.  He identified localized back pain, right side radiculopathy, right side lower limb weakness and the 2011 MRI as medical or clinical findings supporting the limitations he assessed.  (Tr. 1058-1065).

12

### 5.   State Agency Consultants' RFC Assessment

In September, 2011, a state agency consultant evaluated plaintiff's physical RFC based upon a review of the records. He opined that plaintiff was able to do light work with no limitations.   (Tr. 544-551).

A second state agency consultant assessed plaintiff's RFC in December, 2011.   This doctor noted that a "new MRI" showed moderate left foraminal stenosis at L4-5 and mild foraminal stenosis at L5-S1and L3-4.   He agreed that plaintiff could do a full range of light work.   (Tr. 664-666).

## Analysis

Plaintiff first argues that the ALJ erred in weighing the medical opinions.

The ALJ gave Dr. Altwal's opinion "little weight" because it was "extremely exaggerated" and not supported by Dr. Altwal's treatment notes or the "overall treatment record."   He gave "great weight" to the state agency consultants' opinions because they were "consistent with the overall medical record and the above residual functional capacity."   (Tr. 22).

Dr. Altwal is a treating doctor.   The ALJ is required to consider a number of factors in weighing a treating doctor's opinion.   The applicable regulation refers to a treating healthcare provider as a "treating source."   20 C.F.R. §404.1527(c)(2) governs the weighing of treating source opinions:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating

13

> source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

Obviously, the opinions of treating doctors are not necessarily entitled to controlling weight. Rather, a treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).

It is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions. See, 20 C.F.R. §404.1527(c)(3). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010), citing §404.1527.

In weighing the medical opinions, the ALJ is not permitted to "cherry-pick" the evidence, ignoring the parts that conflict with his conclusion. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). While he is not required to mention every piece of evidence, "he must at least minimally discuss a claimant's evidence that

contradicts the Commissioner's position." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000).

Here, the ALJ wholly failed to mention several pieces of evidence that arguably supported Dr. Altwal's opinion. For starters, he did not analyze Dr. Altwal's treatment notes at all, so it is difficult to understand how he concluded that the treatment notes did not support the doctor's opinion. Nor did he mention the November 2011 MRI on which Dr. Altwal explicitly relied. And, he failed to mention Dr. Ghalambor's records. In fact, the ALJ stopped his analysis of the medical records with Dr. Chapa's exam in September 2011, and noted only that plaintiff went to the emergency room "on occasion" thereafter. (Tr. 21). This was before plaintiff even began seeing Dr. Altwal.

For the same reason, the ALJ's determination that the state agency consultants' opinions were entitled to great weight is not supported by substantial evidence. The ALJ is required to consider the factors set forth in 20 C.F.R.§404.1527(a) through (d) in evaluating the opinions of state agency consultants, and must explain in his decision the weight given to such opinions. 20 C.F.R.§404.1527(e); *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). ALJ Martin found the opinions to be consistent with the overall medical record, but he gave no indication in his written decision that he had considered the *overall* medical record. And, giving great weight to the state agency consultants' opinions because they were consistent with the ALJ's own RFC assessment is nonsensical.

The Commissioner argues that the ALJ's rejection of Dr. Altwal's opinion is supported by Dr. Glenn's opinion that the temporary limitations he assessed would

15

expire by December 2010 and by Dr. Glenn's February 2011 opinion that plaintiff was zero-percent impaired.  See, Doc. 31, p. 6.  The problem with this argument is that both the ALJ and the Commissioner ignore a crucial part of Dr. Glenn's January 2011 note.

In January 2011, Dr. Glenn tacitly acknowledged that his prediction that plaintiff's limitations would "expire" by December 2010 turned out to be wrong. He noted that plaintiff had tried to return to work and this had caused a recurrence of his symptoms.  His impression was that plaintiff had lumbar degenerative disease with chronic lumbago, and he recommended further treatment with a referral to pain management and continued physical therapy.  Further, Dr. Glenn stated that plaintiff was, at that point, "unable to return to his usual and customary occupation" and continued him on modified work duty status.  (Tr. 303-306). While it is true that, the next month, Dr. Glenn rated plaintiff as zero-percent impaired, there is no indication that he had examined plaintiff in the interim or had reviewed any records in arriving at that conclusion.  The ALJ and the Commissioner fail to recognize that Dr. Glenn's rating appears to have no support in the record.

In view of the ALJ's selective review of the medical records, the Court finds that the ALJ failed to build the required "logical bridge" from the evidence to his conclusions about the relative weight to be afforded to the medical opinions. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).    Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review."  *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2010),

16

citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

In view of the disposition of plaintiff's first point, it is not necessary to analyze plaintiff's other arguments in detail. With regard to the credibility analysis, the ALJ relied heavily on statements plaintiff made in a function report (Ex. 6E) that was submitted in May 2011. (Tr. 21). However, plaintiff testified that his back pain had gotten worse over time, which has some support in the medical records. Further, the activities cited by the ALJ (dressing, bathing, caring for his hair; making simple meals; watching television and reading) are not inconsistent with being unable to sustain full-time work. See, *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

The ALJ also pointed out that plaintiff said in his function report that he looked for work every day. The Seventh Circuit has disapproved of such logic:

> And, as we have explained, a claimant's *desire* to work is not inconsistent with her inability to work because of a disability. See *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir.2015) (claimant's desire to work, but inability to find work, is "consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment"); *Jones v. Shalala*, 21 F.3d 191, 192 (7th Cir.1994) (explaining that claimant might be earning a decent wage despite being permanently disabled).

*Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)(emphasis in original). Plaintiff made this statement in May 2011, and the record reflects that plaintiff tried working at two or three different jobs around that time, but had to quit after only two weeks because of increased back pain. The ALJ acknowledged that these were unsuccessful work attempts. (Tr. 14). Plaintiff's desire work in May 2011 is not a valid reason to disbelieve him.

For these reasons, the ALJ's credibility analysis is suspect, and should be

17

reconsidered in light of a review of all of the medical evidence on remand.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Cave was disabled during the relevant time period or that he should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Ward A. Cave's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE:	June 6, 2016.


			s/ Clifford J. Proud
			**CLIFFORD J. PROUD**
			**UNITED STATES MAGISTRATE JUDGE**